UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **BEN JOSEPH DEHLER** | **17-10237** |
| **KAMI KAY DEHLER** | SECTION A |
| DEBTORS | CHAPTER 7 |
| **MARIVETTE MOUTON** | ADVERSARY NO. |
| **GREGORY MOUTON** | **17-1045** |
| PLAINTIFFS | |
| VERSUS | |
| **KAMI DEHLER** | |
| DEFENDANT | |

## REASONS FOR DECISION

On or about August 16, 2007, Marivette Mouton and Gregory Mouton (the "Moutons") filed a "Petition for Damages, Wrongful Death and Survival Action" against Kami Dehler ("Dehler") and "ABC Insurance Company." (P-22). The cause of action arose from the death of the Moutons' infant daughter, Marybeth Mouton. The Moutons alleged that enumerated actions and/or inactions on the part of Dehler, who served as a midwife during the delivery of the Moutons' child, constituted negligence and Dehler's negligence caused the death of their daughter. (P-22, enumerated paragraphs 18, 19, 20, 21, 23, 24 and 26.) Following a non-jury trial which occurred on January 18, 2017 through January 20, 2017, the state district court, without specifying a cause of action on which liability was based, rendered Judgment in favor of the Moutons and against Dehler, awarding a total of $600,000.00 in damages. (P-22-1).

On January 31, 2017, Dehler and her husband filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana.  By virtue of the filing of her bankruptcy proceeding, Dehler seeks the discharge of her debts.  The Moutons filed the above-captioned adversary proceeding objecting to a discharge of the debt owed by virtue of the state court Judgment.  Dehler seeks the dismissal of the adversary proceeding, filing the instant Motion for Judgment on the Pleadings and/or Motion for Summary Judgment (P-20).  Because Dehler has presented the Court with evidence outside of the pleadings, specifically, the state court petition and judgment, the instant motion will be treated as one for summary judgment.  *See* Fed. R. Civ. P. 12(d).

Summary Judgment is proper when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter  of law.  *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1079 (5th Cir. 1995); Fed. R. Civ. Proc. 56(c); Bankruptcy Rule 7056(c).  The movant bears the burden of proving "absence of genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  "An issue is material if its resolution could affect the outcome of the action."  *Weeks Marine, Inc. v. Fireman's Fund Insurance Co.*, 340 F.3d 233, 235 (5th Cir. 2003).

In their adversary complaint, the Moutons argue that the above-referenced debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" Thus, the issue to be addressed, should the matter proceed to trial, is whether Dehler's actions and/or inactions constituted a "willful and malicious injury" to the Moutons.  Dehler, however, argues that this Court is precluded from reaching the above issue based upon the doctrines of *res judicata,*

2

prescription, and judicial estoppel.  Alternatively, Dehler argues that even if the above doctrines do

not bar the Moutons from raising their intentional tort claims, she is entitled to relief on the merits.

Dehler's claim in this regard, succinctly stated, is based upon the fact that the Moutons relied upon

negligence in the state court proceeding, that they are raising the same allegations before this Court

that they raised before the state court, and that negligence is insufficient to warrant relief under §

523(a)(6).  Each of Dehler's arguments will be addressed.

**Res Judicata**

The purpose of both federal and state law on *res judicata* is generally the same - to promote

judicial efficiency and final resolution of disputes by preventing needless relitigation.  *Mandalay*

*Oil & Gas*, L.L.C. *v. Energy Development Corp.*, 880 So.2d 129, 135 (La. App. 1st Cir. 2004)

(citation omitted).   Under Louisiana law, *res judicata* precludes relitigation of a subject matter

arising from the same transaction or occurrence as a previous lawsuit.  *Id.*[1]  Similarly, the Supreme

Court has provided that pursuant to *res judicata*, a final judgment on the merits bars further claims

by parties based on the same cause of action.  *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct.

970, 973, 59 L.Ed.2d 210 (1979).

In the instant matter, there is a $600,000.00 state court final judgment on the merits in favor

of the Moutons and against Dehler arising from the actions and/or inactions on the part of Dehler

in connection with the delivery of the Moutons' child.  There was no finding or even any allegation

in the Moutons' state court petition that Dehler acted willfully or maliciously.  Dehler asserts that

based upon *res judicata*, the Moutons are precluded from arguing before this Court that Dehler acted

---

[1]  The full faith and credit statute requires federal courts to follow state rules of *res judicata* when the claim
is premised on a state court judgment.  *Browning v. Navarro*, 887 F.2d 58 (5th Cir. 1989).

3

willfully and maliciously in connection with her actions and/or inactions in the delivery of the Moutons' child.

A very similar argument was presented to the Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In *Brown*, a state court lawsuit was filed in which G. Garvin Brown III ("Brown") claimed damages based upon the misrepresentations and non-disclosure of material facts by Mark Paul Felsen ("Felsen"). The suit was settled by stipulation with the result being that Brown attained a judgment on the merits against Felsen. There was no indication in either the stipulation or judgment as to the cause of action on which Felsen's liability was based.

Shortly after Brown attained his judgment against Felsen, Felsen filed a petition for bankruptcy, seeking to have his debt to Brown discharged. As the Court explained, it is through bankruptcy that a debtor attains "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Id.*, 442 U.S. at 128, 99 S.Ct. at 2208 (quotation omitted). However, the Court noted that by seeking discharge, the debtor places "the rectitude of his prior dealings squarely in issue" as bankruptcy affords a clean slate "to the honest but unfortunate debtor." *Id.* (quotation omitted). It is with this edict in mind that certain actions on the part of the debtor place discharge out of reach. As noted above, § 523 (a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor ...." Similarly, § 523(a)(4) excepts from discharge any debt resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

Brown, like the Moutons, sought to establish that Felsen's debt to him was not dischargeable, asserting, in part, that Felsen's actions, under which the state court judgment was attained, were

4

fraudulent.  In response, Felsen answered and moved for summary judgment, arguing that the prior

state court proceeding did not result in a finding of fraud and that *res judicata* barred relitigation of

the matter even though the application of the exceptions to dischargeability had not been at issue in

the state court proceeding.  Stated differently, Felsen argued that because fraud was not raised in the

state court proceeding, Brown was precluded from raising it in the bankruptcy proceeding even

though it was an issue in the bankruptcy proceeding and it had not been an issue in the state court

action.

      The Supreme Court rejected Felsen's argument, observing that the precepts behind *res*

*judicata* are not undercut by allowing Brown to pursue his fraud claim against Felsen.  The Court

stated:

> [Brown] does not asset a new ground for recovery, nor does he attack the validity of
> the prior judgment.  Rather, what he is attempting to meet here is the new defense
> of bankruptcy which [Felsen] has interposed between [Brown] and the sum
> determined to be due him.... [Felsen] has upset the repose that would justify treating
> the prior state-court proceeding as final, and it would hardly promote confidence in
> judgments to prevent [Brown] from meeting [Felsen's] new initiative.

*Id*., 442 U.S. at 133, 99 S.Ct. at 2210.

      The Supreme Court further observed that requiring a creditor to pursue a dischargeability

argument in an underlying state court proceeding would be contrary to a statutory policy in favor

of resolving discharge issues in bankruptcy court "and would force state courts to decide these

questions at a stage when they are not directly in issue and neither party has a full incentive to

litigate them."  *Id*., 442 U.S. at 134, 99 S.Ct. at 2211 (citation omitted).  Noting that in the

underlying state court proceeding, the debtor's bankruptcy is still hypothetical, applying *res judicata*

under these circumstances would force an unwilling party to try dischargeability issues "to the hilt

in order to protect himself against the mere possibility that a debtor might take bankruptcy in the

5

future." *Id*.

In concluding that Brown was not precluded from bringing his claim against Felsen, the

Supreme Court reasoned:

> Refusing to apply *res judicata* here would permit the bankruptcy court to
> make an accurate determination whether Felsen in fact committed the deceit, fraud,
> and malicious conversion which [Brown] alleges. These questions are now, for the
> first time, squarely in issue. They are the type of question Congress intended that the
> bankruptcy court would resolve. That court can weigh all the evidence, and it can
> also take into account whether or not [Brown's] failure to press these allegations at
> an earlier time betrays a weakness in his case on the merits.

*Id*., 442 U.S. at 138, 99 S.Ct. at 2212.

As was the case in *Brown*, the creditors in this case, the Moutons, had no incentive to raise

the claim of willful and malicious injury in the state court proceeding. The matter did not become

an issue until Dehler filed for bankruptcy relief. It is within the province of this bankruptcy court

to adjudicate dischargeability issues and applying *res judicata* would prevent the court from

fulfilling its duty in this regard.

**Prescription**

Dehler argues that the Moutons' intentional tort claim has a prescriptive period of one-year

and as the injury occurred over eleven (11) years ago, the claim has prescribed. However, as the

above-quoted language in *Brown* makes clear, the Mouton's claim is for nondischargeability.

Although that may require some or all of the same proof as would be needed to prove an intentional

tort, the cause of action, nondischargeability, did not arise until Dehler filed her bankruptcy petition.

The petition was filed on January 31, 2017. The Moutons filed their adversary proceeding raising

nondischargeability against Dehler on June 29, 2017, well within the statute of limitations period.

6

**Judicial Estoppel**

Judicial estoppel is an equitable doctrine which can be employed to prevent a party from asserting a position in a legal proceeding that is inconsistent with a prior position. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993).

In this case, Dehler has argued that the Moutons are attempting to play "fast and loose" with the courts, but has failed to support that argument. As noted above, the Moutons did not allege that Dehler acted willfully and maliciously in the state court proceeding because the matter was not at issue; Dehler had not filed for bankruptcy relief. Such was not the situation in a case heavily relied upon by Dehler in support of her judicial estoppel claim, *In re Hampton*, 519 B.R. 483 (Bankr. M.D. La. 2014).

In *Hampton*, John Johnson ("Johnson") filed a state court lawsuit against Melvin L. Hampton ("Hampton") and Hampton's insurer, State Farm Automobile Insurance Company ("State Farm"), arising from an automobile accident. A judgment was attained against Hampton and State Farm in the amount of $365,263.64.

Following the state court judgment, Hampton filed for Chapter 7 bankruptcy relief. Thereafter, Johnson filed an adversary proceeding seeking to have the debt arising from the state court judgment excepted from discharge under §523(a)(6), arguing that the accident arose from

7

willful and malicious action on the part of Hampton, specifically, that Hampton was engaged in drag racing at the time of the accident.

In determining that Johnson, by virtue of the underlying state court proceeding, was judicially estopped from claiming willful and malicious conduct on the part of Hampton in the bankruptcy proceeding, the *Hampton* court made clear that Johnson's failure to bring an intentional tort claim in state court was not a mere oversight on the part of Johnson. Instead, Johnson purposely did not raise such a claim because to do so would have jeopardized State Farm's coverage of the claim. Johnson purposefully did not raise the prospect of intentional action causing the accident and, as such, could not, for purposes of escaping a discharge of the debt, choose to raise the claim in bankruptcy court. Such action exemplifies the type of action that judicial estoppel is aimed to prevent, a litigant "deliberately changing positions according to the exigencies of the moment." *McCaskey*, *supra*.

In this case, the Moutons did not receive a judgment against an insurer. However, it remains a question as to whether or not they engaged in purposeful conduct regarding the absence of any assertion regarding Dehler's willful and malicious action. At least at this stage of the proceedings, the Moutons are not judicially estopped from raising the matter before this Court.

**Merits**

Finally, in her motion for summary judgment, Dehler argues the merits of the case, asserting that claims of mere negligence, the claims presented to the state court, are insufficient to except a debt from discharge under the provisions of §523(a)(6). However, the fact that allegations of negligence, rather than willful and malicious injury, supported the Mouton's state court action against Dehler does not preclude the Moutons from presenting many of the same or additional facts

8

in order to establish intentional conduct rather than negligence. The intentionality of Dehler's actions was not raised before the state court not because such a finding was impossible, but rather, because the intentional nature of Dehler's actions and/or inaction were not at issue until she sought bankruptcy relief. The Moutons are clearly entitled to litigate their claims against Dehler to see if they rise to the level necessary to except the debt from discharge. By that same token, the fact that the Moutons did not raise a cause of action based on intentional tort before the state court is a factor this Court may take account of in determining whether the Moutons have satisfied their burden of proof.

Accordingly, it is ordered that the motion for summary judgment (P-20) filed on behalf of Dehler is DENIED.

New Orleans, Louisiana, November 29, 2017.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge